IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| TYQUANA JACKSON, an individual; MACKENZIE CONLEY, an individual; SANGEETA DAW, an individual; NOAH GRASSIE, an individual; MARK HAMRICK, an individual; JASON LAWTON, an individual; STEVEN LEHNER, an individual; STEPHANIE MULFORD, an individual; on behalf of themselves and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AMERIMED EMERGENCY MEDICAL SERVICES, LLC., a Georgia Corporation; <br><br> AMERIMED MEDICAL SOLUTIONS, LLC, a Georgia Corporation; <br><br> AMERIMED HEALTH AND WELFARE PLAN, an employee benefit plan; <br><br> ASHLEY WATSON, an individual; and <br><br> JOHN DOE PLAN FIDUCIARY(S), individual(s), <br><br> Defendants. | Case No. 2:26-cv-00032-RWS <br><br> First Amended <br> Class Action Complaint |

## COMPLAINT

## I.   INTRODUCTION

1. Plaintiffs Tyquana Jackson, Mackenzie Conley, Sangeeta Daw, Noah

   Grassie, Mark Hamrick, Jason Lawton, Steven Lehner and Stephanie

Mulford are current and former employees of Defendant Amerimed Emergency Medical Services, LLC ("Amerimed EMS"), a company offering emergency medical and patient transportation services in six states, including Georgia. Amerimed EMS offers health, dental, and vision benefits to its employees through a self-funded plan sponsored by its parent company, Defendant Amerimed Medical Solutions, LLC ("Amerimed Medical"). The plan is called Amerimed Health and Welfare Plan ("Plan") and offered medical and pharmacy benefits. From January 1, 2023, through approximately December 17, 2025, the Plan processed medical claims through third party administrator Meritain Health ("Meritain") and processed pharmacy claims through third party administrator Liviniti ("Liviniti"). The Plan Administrator is Defendant Ashley Watson (hereinafter, Defendants Amerimed EMS, Amerimed Medical, and Ashley Watson shall be referred to collectively as "Defendants"). Defendants deducted set premiums from Plaintiffs' and other Plan participants' weekly paychecks to cover premiums and were responsible for timely remitting these premiums, in addition to sufficient employer contributions, to accounts controlled by Meritain and Liviniti to ensure adequate funds could cover their employees' chosen health benefits.

2

2. Throughout 2024 and 2025, Defendants failed to sufficiently fund the Plan, such that the Plan could not timely pay Plan participants' medical claims.

3. Plaintiffs and other similarly situated Plan participants sought medical treatment during this time, not knowing that Defendants failed to sufficiently fund the Plan to cover their incurred medical expenses. Plaintiffs and similarly situated Plan participants suffered losses including but not limited to unpaid medical claims.

4. Starting on or about September 2025, Defendants failed to timely remit the premiums it withheld from its employees' paychecks, causing Meritain and Liviniti to repeatedly cancel the benefits. During this time, Defendants continued to deduct weekly premiums, did not inform Plan participants that the coverage was terminated, and allowed participants to believe that they were still covered. Defendants did not keep the employees' withheld premiums in trust, as required, but instead misappropriated and misused assets belonging to the Plan. As a result, Defendants have stolen Plaintiffs' wages and benefits and left them vulnerable to substantial financial liability to their medical providers.

5. Plaintiffs and other similarly situated Plan participants sought medical treatment during this time, not knowing that the benefits they were paying

3

for had been canceled.  Plaintiffs and similarly situated Plan participants suffered losses, including stolen Plan assets and unpaid medical claims.

6. Plaintiffs, individually and as representatives of a class of participants and beneficiaries of the employee welfare benefit plan sponsored by Defendant Amerimed Medical, allege the following:

7. This action arises under Title I of the Employee Retirement Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1191c, and is brought by Plaintiffs under ERISA §§ 502(a)(1), (2), and (3), 29 U.S.C. §§ 1132(a)(1), (2), and (3), to recover benefits due to them under the terms of the Plans, to enjoin acts and practices that violate the provisions of Title I of ERISA and the terms of the Plans, to obtain appropriate equitable relief to redress violations of ERISA and the Plans, and to enforce the provisions of ERISA.

8. This action is filed against Defendant Amerimed EMS and its parent company Amerimed Medical, both Georgia corporations, Defendant Ashley Watson ("Watson"), the Plans' Administrator, and Defendant(s) John Doe Plan Fiduciary(s), individual(s), the unknown fiduciary(s) of the Plans. (collectively, "Defendants").

9. Defendants are or were fiduciaries of an employee welfare benefit plan as defined by ERISA: The Amerimed Health and Welfare Plan ("Plan").

10. On June 13, 2024, Defendants filed with the Department of Labor and the IRS the 2022 Form 5500 Annual Report of Plan, attached as Exhibit 1. That filing stated, under penalty of perjury, that the Plan was a fully-insured plan provided by Cigna Health and Life Insurance Company ("Cigna") with a Plan year of 9/1/22 to 8/31/23. However, this filing does not reflect the self-funded plan in effect as of January 1, 2023.

11. Also on June 13, 2024, Defendants filed with the Department of Labor and the IRS the 2022 Form 5500 Annual Report of Plan, attached as Exhibit 2. That filing stated, under penalty of perjury, that the Plan was a fully-insured plan provided by Cigna with a Plan year of 9/1/23 to 12/31/23. However, this filing does not reflect the self-funded plan in effect as of January 1, 2023.

12. On October 7, 2025, Defendants filed with the Department of Labor and the IRS the 2024 Form 5500 Annual Report of Plan, attached as Exhibit 3. That filing stated, under penalty of perjury, that the Plan was a fully-insured plan provided by Cigna with a Plan year of 1/1/24 to 12/31/24. However, this filing does not reflect the self-funded plan in effect as of January 1, 2023.

13. As of this date, Defendants have not yet filed the 2025 Form 5500 Annual Report of Plan with the Department of Labor and the IRS.

5

## II.    JURISDICTION AND VENUE

11. This court has jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

12. The Plan is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

13. Venue of this action lies in the Northern District of Georgia pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because at all relevant times, the Plan has been administered in Buford, Hall County, within this district.

## III.    PARTIES

14. Plaintiff Tyquana Jackson is, and at all relevant times has been, an employee of Defendant Amerimed EMS and a Plan participant. Ms. Jackson is a resident of Georgia. Ms. Jackson is a Plan participant within the meaning of 29 U.S.C. 1002(7).

15. Plaintiff Mackenzie Conley was, at all relevant times until October 2025, an employee of Defendant Amerimed EMS and a Plan participant. Ms. Conley is a resident of Ohio. Ms. Conley is a Plan participant within the meaning of 29 U.S.C. 1002(7).

16. Plaintiff Sangeeta Daw was, at all relevant times until August 2025, an employee of Defendant Amerimed EMS and a Plan participant. Ms. Daw

is a resident of Ohio. Ms. Daw is a Plan participant within the meaning of 29 U.S.C. 1002(7).

17. Plaintiff Noah Grassie was, at all relevant times until October 2025, an employee of Defendant Amerimed EMS and a Plan participant. Mr. Grassie is a resident of Ohio. Mr. Grassie is a Plan participant within the meaning of 29 U.S.C. 1002(7).

18. Plaintiff Mark Hamrick is, and at all relevant times since May 2024 has been, an employee of Defendant Amerimed EMS and a Plan participant. Mr. Hamrick is a resident of Tennessee. Mr. Hamrick is a Plan participant within the meaning of 29 U.S.C. 1002(7).

19. Plaintiff Jason Lawton was, at all relevant times from October 2024 through September 2025, an employee of Defendant Amerimed EMS and a Plan participant. Mr. Lawton is a resident of Georgia. Mr. Lawton is a Plan participant within the meaning of 29 U.S.C. 1002(7).

20. Plaintiff Steven Lehner was, at all relevant times until October 2025, an employee of Defendant Amerimed EMS and a Plan participant. Mr. Lehner is a resident of Ohio. Mr. Lehner is a Plan participant within the meaning of 29 U.S.C. 1002(7).

21. Plaintiff Stephanie Mulford was, until January 7, 2026, and at all relevant times was, an employee of Defendant Amerimed EMS and a Plan

participant. Ms. Mulford is a resident of Georgia. Ms. Mulford is a Plan participant within the meaning of 29 U.S.C. 1002(7).

22. Defendant Amerimed EMS is, and at all relevant times has been, a for-profit company based in Buford, Hall County, Georgia, within the jurisdiction of this Court.

23. Defendant Amerimed EMS provides, and at all relevant times has provided, emergency medical transport services in six states: Georgia, Florida, Indiana, Ohio, South Carolina, and Tennessee.

24. At all relevant times, Defendant Amerimed EMS exercised discretionary authority and control respecting the management and disposition of the Plan and its assets and exercised discretionary authority and responsibility in the administration of the Plan and thus was and is a fiduciary of the Plan within the meaning of ERISA §§ 3(21)(A)(i), 29 U.S.C. §§ 1002(21)(A)(i).

25. For the reasons identified in ¶ 24, at all relevant times, Defendant Amerimed EMS was and is a party in interest to the Plan within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

26. At all relevant times, Defendant Amerimed EMS was and is an employer whose employees are covered by the Plan, and so was and is a party in interest to the Plans within the meaning of ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C).

8

27. Defendant Amerimed Medical is, and at all relevant times has been, a for-profit company based in Buford, Hall County, Georgia, within the jurisdiction of this Court.

28. Defendant Amerimed Medical is the parent company to Amerimed EMS and Amerimed Mobile Integrated Healthcare, LLC; through these two subsidiaries, Amerimed Medical provides, and at all relevant times has provided, emergency medical transport services and transition care management, temporary primary care, and urgent in-home care to patients in Georgia and beyond.

29. Defendant Amerimed Medical is the Plan Sponsor.

30. At all relevant times, Defendant Amerimed Medical exercised discretionary authority and control respecting the management and disposition of the Plan and its assets and exercised discretionary authority and responsibility in the administration of the Plan and thus was and is a fiduciary of the Plan within the meaning of ERISA §§ 3(21)(A)(i), 29 U.S.C. §§ 1002(21)(A)(i).

31. For the reasons identified in ¶29 - 30, at all relevant times, Defendant Amerimed Medical was and is a party in interest to the Plan within the meaning of ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

32. At all relevant times, Defendant Amerimed Medical was and is an

employer whose employees are covered by the Plan, and so was and is a party in interest to the Plan within the meaning of ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C).

33. The Plan is an employee welfare benefit plan, established on September 1, 2020.

34. At all relevant times, the Plan was and is a self-funded Plan providing medical benefits through third-party administrator Meritain and pharmacy benefits through third-party administrator Liviniti.

35. The Plan is named as a defendant herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

36. According to the 2024 Form 5500 for the Plan, attached as Exhibit 3, Ashley Watson is and, since at least January 1, 2024, has been the Plan Administrator.

37. Upon information and belief, Ashley Watson is an individual who, at all relevant times, lived and worked in Hall County, Georgia.

38. At all times since at least January 1, 2024, Watson, as Plan Administrator, was and is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), and was and is a party in interest to the Plan within the meaning of ERISA § 3(14)(A), 29 U.S.C.

§ 1002(14)(A).

39. Upon information and belief, at all relevant times additional individual(s) employed by Amerimed Medical and/or Amerimed EMS exercised discretionary authority and control respecting the management and disposition of the Plan and its assets and exercised discretionary authority and responsibility in the administration of the Plan. Thus, this additional individual(s) was and is a fiduciary of the Plan within the meaning of ERISA §§ 3(21)(A)(i), 29 U.S.C. §§ 1002(21)(A)(i), and a party in interest to the Plan within the meaning of ERISA §§ 3(14)(A) and (H), 29 U.S.C. §§ 1002(14)(A) and (H). The identity(s) of the Plan's additional fiduciary(s) is currently unknown to Plaintiffs, who will substitute the additional fiduciary(s) name(s) once ascertained.

## IV.   GENERAL ALLEGATIONS

### A. Self-Funded Plans

40. A self-funded benefits plan is a form of self-insurance by which an employer uses its own funds to provide benefits to employees. Rather than obtaining insurance policies from an insurance carrier, the employer assumes direct responsibility for the cost of benefits. Self-funded plans are advantageous to employers, as they generally are less expensive than traditional insurance. In addition, the employer can retain possession and

control of the funds in trust that otherwise would be paid to an insurance carrier for traditional insurance.

41. Of course, by opting for a self-funded plan, the employer assumes certain obligations. The employer must pay the cost of covered benefits claims under the self-funded plan. Where the cost of those claims exceeds the premiums paid by plan participants, it is the employer's obligation to make up the shortfall.

42. In addition, ERISA requires that fiduciaries who manage plan assets act solely, exclusively, and prudently in the interests and for the benefit of the plan and plan participants.

## B. <u>The Plan</u>

43. Amerimed Medical offered health benefits (including medical, dental and vision benefits) and pharmacy benefits to the employees of its subsidiary Amerimed EMS, including Plaintiffs, through its self-funded Amerimed Health and Welfare Plan. The Plan is an employee benefit plan within the meaning of Section 2(3) of ERISA, 29 U.S.C. §1002(3).

44. Although Amerimed Medical and/or Amerimed EMS could have procured health and other insurance for the employees, it instead opted to implement a self-funded plan, as it was financially advantageous to the companies and their executives and owners.

45. Defendant Amerimed Medical is the Plan Sponsor.

46. Defendant Watson is the Plan Administrator.

47. Plaintiffs could have opted not to participate in the Plan, but instead to purchase private insurance policies or otherwise secure benefits. Defendants induced Plaintiffs, and other similarly situated employees, to participate in the Plan by representing that the Plan would fully and timely reimburse the cost of covered claims. This was critically important to Plaintiffs.

## C. **Defendants Failed to Fully Fund the Plan, Failed to Prudently Manage Plan Assets, and Failed to Make Payments for Covered Health Benefits as Required by the Plan**

48. Defendants made regular payroll deductions from Plaintiffs' and similarly situated Plan participants' paychecks for the putative purpose of funding the Plan. These were effectively the "premiums" for participation in the Plan and were represented as such. Consequently, these amounts were Plan assets that Defendants were obliged to hold in trust and maintain and use for the benefit of the Plan.

49. Defendants were required to hold Plan assets in trust in a dedicated bank account, funded sufficiently to cover all necessary benefits payments under the Plan, which the third-party administrators would draw upon to pay

13

covered claims. Defendants were expected to fund this account with the amounts deducted from employee paychecks and, to the extent necessary, contribute sufficient additional funds to allow for full payment of benefits.

50. From January 1, 2023 through approximately December 17, 2025, the Plan processed medical claims through third party administrator Meritain and processed pharmacy claims through third party administrator Liviniti. As the claim administrators, Meritain and Liviniti were responsible for processing claims for health and pharmacy benefits, determining whether claims were covered under the Plan, and making payments.

51. Plaintiffs are informed and believe and thereon allege that Defendants failed to adequately fund the Plan. Instead, as described more fully below, Defendants retained the funds deducted from its employee payroll and failed to contribute sufficient employer contributions to fully fund the Plan.

52. Plaintiffs are informed and believe and thereon allege that Defendants misused Plan assets, engaged in self-dealing transactions by commingling Plan assets with general corporate funds rather than transferring them to the account controlled by Meritain and Liviniti for the benefit of Plan participants, and otherwise failed to administer the Plan in the interests of Plan participants.

53. Regularly throughout 2024 and 2025, Defendants failed to pay medical

claims incurred by Plan participants that were processed by Meritain and Liviniti and sent to Defendants for payment.

54. In September and October 2025, Defendants delayed issuance of weekly paychecks up to five days after the Friday on which payment was due.

55. In at least September and October 2025, Defendants withheld the Plan participants' premiums to the Plan from their weekly paychecks but did not remit these premiums to the Plan.

56. Moreover, throughout 2024 and 2025, Defendants failed to remit sufficient employer contributions to fully fund the Plan.

57. Because Defendants failed to remit the premiums and Defendants' contributions to the Plan, the third-party administrators were unable to pay adjudicated claims in 2024 and 2025 and were forced to cancel the Plan in October 2025.

58. In November 2025, upon information and belief, Defendants remitted sufficient payments to temporarily restore the Plan.[1]

59. In December 2025, Defendants again began delaying issuance of weekly paychecks, this time up to seven days after the Friday on which payment was due.

---

[1] Plaintiffs do not know if Defendants remitted all previously unremitted withholdings, or merely sufficient premiums to restore the Plan.

60. In December 2025, Defendants again began withholding but not remitting the Plan participants' premiums to the Plan and failing to submit sufficient employer contributions to fully fund the Plan.

61. Because Defendants again failed to remit the premiums and Defendants' contributions to the Plan, the third-party administrators again cancelled the Plan in December 2025.

62. Upon information and belief, Defendants kept the Plan participants' withheld premium payments in Amerimed EMS's general operating account.

63. The consequence of Defendants' failure to ensure adequate Plan funding was predictable: Plan assets were depleted to the point that the Plan could not pay all covered claims and ultimately ceased paying claims.

64. Beyond Defendants' failure to pay certain claims from 2024 and early 2025, Plaintiffs are informed and believe and thereon allege that in mid-2025 Defendants ceased making *any* payments for covered claims under the Plan. Amerimed EMS, however, continued to make regular and routine payroll deductions from its employees, identifying them as funds for the Plan. Defendants did not disclose to Plaintiffs or its other employees that it had failed to adequately fund the Plan or that the Plan had ceased paying claims. Consequently, Plaintiffs and other employees continued to seek

16

medical care and services with the expectation that the costs of such care and services would be covered and paid for as provided by the Plan.

65. On or about December 17, 2025, Defendants engaged a new third-party administrator, Allied Benefits ("Allied") to process Plan claims.

## D. Defendants Failed to Notify Plan Participants of their Failure to Pay Claims, Leaving them Vulnerable to Financial Liability and Medical Insecurity

66. At no time did Defendants or any supervisor inform Plaintiffs and similarly situated Plan participants that the Plan was insufficiently funded and that their withheld premiums had not or had not timely been remitted to the Plan.

67. By withholding premiums from employee paychecks, Defendants allowed Plaintiffs and similarly situated Plan participants to believe that the Plan was in effect and all medical claims incurred by Plan participants would be covered.

68. Defendants' failure to timely inform Plaintiffs and similarly situated Plan participants that the Plan was insufficiently funded and Defendants had not or had not timely remitted withheld premiums constitutes material misrepresentations as to the status of Plan participants' benefits under the Plan.

17

69. Plaintiffs all sought medical treatment during this time, not knowing that the benefits they were paying for had been canceled. Plaintiffs and similarly situated Plan participants suffered losses, including stolen Plan assets and unpaid medical claims.

70. As of the date of this Complaint, Defendants have not paid numerous covered medical claims incurred by Plaintiffs and similarly situated Plan participants.

71. Unpaid medical claims incurred by Plaintiffs and similarly situated Plan participants date back to at least May 2024.

72. When Plaintiffs informed Defendant Amerimed EMS or Amerimed Medical's supervisors that they had received bills for unpaid Plan expenses, the supervisors stated they would "pass along" the bills to Defendant Amerimed's higher management.

73. When Plaintiffs informed Defendant Amerimed EMS or Amerimed Medical's supervisors that they had received bills for unpaid Plan expenses, the supervisors refused to inform Plaintiffs who the bills were being "passed along" to and refused to allow Plaintiffs to speak to higher management about the unpaid claims.

74. At no time did Defendants or any supervisor inform Plaintiffs and similarly situated Plan participants that their insurance had been terminated and/or

claims would not be funded.

75. At no time did Defendants or any supervisor inform Plaintiffs and similarly situated Plan participants that claims dating to at least May 2024 had not been paid.

76. Defendants' failure to timely inform Plan participants of Defendants' failures to pay claims constitutes material misrepresentations as to the status of participants' benefits under the Plan.

77. Plan participants were harmed by Defendants' material misrepresentations because they incurred uncovered claims that they would not have incurred, but for Defendants' misrepresentations.

78. Had Defendants informed Plaintiffs and similarly situated Plan participants that Defendants had not or had not timely remitted premium payments or that the Plan was not fully funded to pay covered claims, at least some participants would not have incurred uncovered claims, either by obtaining alternative health care coverage or by delaying voluntary procedures or medications.

E. **Defendants Failed to Provide Plan Documents to a Requesting Participant, in Violation of ERISA Section 104(b)(4).**

79. After repeatedly asking Defendants to pay his many adjudicated but unpaid medical claims, Plaintiff Steven Lehner submitted a written request for

19

governing Plan documents to Defendant Amerimed EMS Division Manager Matthew Houchin on October 13, 2025, as allowed by ERISA section 104(b)(4).

80. Plaintiff Lehner specifically requested the following documents, all of which are subject to production within thirty-days of request under ERISA section 104(b)(4):

a. The Summary Plan Description (SPD) and any amendments currently in effect;

b. The Plan document or other instruments governing the Plan's operation;

c. The Administrative Services Agreement between Amerimed EMS and Meritain (or any equivalent agreement outlining claims funding and payment responsibilities);

d. The funding policy or trust agreement, if applicable;

e. The most recent Form 5500 annual report filed for the Plan; and

f. Documents clarifying whether employer funds have been released to Meritain for the claims that have already been adjudicated but not yet paid to providers.

81. After receiving no response to his request, Plaintiff Lehner submitted follow-up written requests for the same governing Plan documents on

November 6, 2025, and November 22, 2025. Plaintiff Lehner sent the November 22, 2025, request to Amerimed EMS management, including Defendant Ashley Watson, Plan Administrator.

82. On November 24, 2025, an Amerimed representative provided Plaintiff Lehner with a copy of the Plan Document and Summary Plan Description; however, Defendants did not provide any of the other documents requested by Plaintiff Lehner.

83. After receiving this document, Plaintiff Lehner renewed his request for all other Plan documents and expressly stated in writing that he continued to insist on full compliance with his Section 104(b)(4) request and he did not waive any rights or remedies available to him.

84. Since November 24, 2025, Defendants have provided no additional Plan documents to Plaintiff Lehner.

## V.    CLASS ACTION ALLEGATIONS

85. Plaintiffs bring these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all participants and beneficiaries of the Plan.

86. The Class is defined as follows:

> All current and former plan participants and beneficiaries from January 1, 2023 through approximately December 17, 2025, excluding the Plan's fiduciaries, any beneficiary whose Plan benefits derive from a Plan fiduciary's participation in the Plan,

21

the officers and directors of Defendants Amerimed Medical and Amerimed EMS (including any of their other subsidiaries or affiliates), or of any entity in which a Defendant has a controlling interest, and legal representatives, successors, and assigns of any such excluded persons.

87. The members of the Class are so numerous that joinder of all members is impracticable. According to the 2024 5500 Form, as of December 31, 2024, there were 272 Plan participants, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7). The exact number of Plan participants and beneficiaries, as defined by ERISA § 3(8), 29 U.S.C. § 1002(8), as well as their identities, can be determined from Defendants' records.

88. The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily focus on Defendants' acts (or failure to act). Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

a. Whether Defendants withheld Plan participants' premiums but did not remit the premiums to the Plan;

b. Whether Defendants committed a material misrepresentation by failing to inform Plan participants that they had not or had not timely remitted the withheld premiums to the Plan;

c. Whether Defendants committed a material misrepresentation by failing to inform Plan participants that they had not paid past claims submitted

to the Plan;

d. The amount of losses suffered by the Plan as a result of Defendants' fiduciary violations and/or other appropriate equitable relief.

89. The questions of law or fact that are common to the Class predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liability to the Class, listed above, are common to the Class as a whole, and predominate over any questions affecting only individual Class members.

90. Named Plaintiffs' claims are typical of the claims of other members of the Class. Plaintiffs' claims arise out of the same uniform course of conduct by Defendant and are based on the same legal theories as the claims of other members of the Class.

91. Plaintiffs and the Class have all been injured in that they have been harmed due to Defendants' common actions and inactions in regard to the unremitted and untimely remitted premiums and unpaid claims. Defendants' corporate wide policies and practices affected the Class similarly, and Defendants benefited from the same type of wrongful acts as to each of the Class members.

92. Because Plaintiffs seek relief on behalf of the Plan pursuant to § 502(a)(2) of ERISA, 29 U.S.C. 1132(a)(2), their claims are not only typical of, but

23

the same as, a claim under § 502(a)(2) brought by any other Class member.

93. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are not antagonistic to, but rather are in unison with, the interests of other Class members.

94. Defendants do not have any unique defenses that would interfere with Plaintiffs' representation of the Class.

95. Plaintiffs' counsel, both former Trial Attorneys with the United States Department of Labor, Office of the Solicitor ("SOL"), have extensive experience in complex litigation, including numerous ERISA cases involving failure to remit premiums and material misrepresentations. Counsel Chastain additionally served as acting ERISA Counsel for a period of two years, supervising all SOL ERISA litigation throughout the Southeast. Counsel Lubow additionally has extensive experience handling class action litigation and is Of Counsel to a firm that does primarily class action litigation.

96. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

97. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Class members to pursue their claims individually would entail a host of separate suits, with

concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation

98. Additionally, fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the plans and their participants and beneficiaries. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the Plan as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

99. Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants fulfilled their fiduciary obligations to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the Plan even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to

this litigation by being included in the Class.

100. Because Defendants have acted or refused to act on grounds generally applicable to the Class, appropriate declaratory and injunctive relief applies to Plaintiff and the Class as a whole.

101. No other litigation concerning this controversy has been filed by any other members of the Class.

## COUNT I: BREACH OF FIDUCIARY DUTY

## ERISA SECTION 404(A)(1), 29 U.S.C. § 1104(A)(1)

102. Plaintiffs incorporate and re-plead by reference the allegations of paragraphs 1 through 101, as though fully set forth herein.

103. The Plan documents identify Ashley Watson as the Plan Administrator and the Plan's Named Fiduciary. In addition, Amerimed Medical and Amerimed EMS were responsible for making and did make discretionary decisions regarding, among other things, Plan administration, and had and exercised control over Plan assets. Accordingly, all of these Defendants are and acted as fiduciaries of the Plan.

104. As fiduciaries of the Plan, Defendants had the duties set forth in in ERISA section 404, 29 U.S.C. § 1104(a)(1)(A) – (D), including but not limited to (A) to discharge their duties solely in the interests of Plan participants and their beneficiaries and for the exclusive purpose of

providing benefits to them or defraying reasonable expenses of administering the Plan; (B) to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity would use in the conduct of an enterprise of a like character and with like aims; and (D) to discharge their duties in accordance with the documents and instruments governing the Plan.

105. Through its conduct described in paragraphs 40 to 100, Defendants Amerimed EMS, Amerimed Medical, and Ashley Watson breached their fiduciary duties by, among other things:

a. Failing to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plan's administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b. Failing to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

c. Failing to act in accordance with the documents and instruments governing the plan, in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

106. As a result of such breaches, Defendants have caused monetary loss to Plaintiffs, the Plan, and similarly situated Plan participants, including stolen plan assets and unpaid medical claims.  Under ERISA Sections 409 and 502(a)(2), Defendants, as fiduciaries, are individually liable for losses caused by their fiduciary breaches.  Accordingly, Plaintiffs seeks relief against Defendants on behalf of themselves and all others similarly situated, and on behalf of and for the benefit of the Plan.

## COUNT II: PROHIBITED TRANSACTIONS

## ERISA SECTION 406, 29 U.S.C. § 1106

107. Plaintiffs incorporate and re-plead by reference the allegations of paragraphs 1 through 101, as though fully set forth herein.

108. Section 406(a)(1) of ERISA prohibits certain transactions between benefit plans and "parties in interest," a term defined to include plan fiduciaries, plan sponsors, and persons "providing services to such plan." *See* 29 U.S.C. §§ 1002(14)(A)–(B), 1106(a)(1). This provision supplements the fiduciary's general duty of loyalty by categorically barring certain transactions deemed likely to injure the ERISA-covered plan.

28

109. Immediately upon being withheld from Plan participants' paychecks, the premium payments became assets belonging to the Plan.

110. By failing to forward these premiums to the Plan and, instead, causing these plan assets to be commingled in Defendant Amerimed EMS's general business account, Defendants engaged in the following transactions prohibited by ERISA:

a. Caused the Plan to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plan, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

b. Dealt with assets of the Plan in their own interest in violation of ERISA§ 406(b)(1), 29 U.S.C. § 1106(b)(1); and

c. Acted on behalf of a party whose interests are adverse to the interests of the Plan or the interests of its participants and beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

111. As a result of their participation in these prohibited transactions, Defendants have caused monetary loss to Plaintiffs, the Plan, and similarly situated Plan participants, including stolen plan assets and unpaid medical claims. Under ERISA Sections 409 and 502(a)(2), Defendants, as fiduciaries, are individually liable for losses caused by their participation

29

in prohibited transactions.  Accordingly, Plaintiffs seeks relief against Defendants on behalf of themselves and all others similarly situated, and on behalf of and for the benefit of the Plan.

### COUNT III: FAILURE TO HOLD PLAN ASSETS IN TRUST

### ERISA SECTION 403, 29 U.S.C. § 1103

112.  Plaintiffs incorporate and re-plead by reference the allegations of paragraphs 1 through 101, as though fully set forth herein.

113.    Through their conduct, Defendants failed to ensure that all assets of the Plan were held in trust and did not inure to the benefit of Defendants, in violation of ERISA § 403(a) and (c)(1), 29 U.S.C. § 1103(a) and (c)(1).

114.  As a result of their failure to hold all Plan assets in trust, Defendants have caused monetary loss to Plaintiffs, the Plan, and similarly situated Plan participants, including stolen plan assets and unpaid medical claims. Under ERISA Sections 409 and 502(a)(2), Defendants, as fiduciaries, are individually liable for losses caused by this breach.  Accordingly, Plaintiffs seeks relief against Defendants on behalf of themselves and all others similarly situated, and on behalf of and for the benefit of the Plan.

### COUNT IV: LIABILITY FOR BREACH OF CO-FIDUCIARY

### ERISA SECTION 405, 29 U.S.C. § 1105

115.  Plaintiffs incorporate and re-plead by reference the allegations of

30

paragraphs 1 through 101, as though fully set forth herein.

116.  By participating knowingly in the fiduciary breaches and prohibited transactions of one another, knowing such acts or omissions to be breaches of fiduciary duty, Amerimed Medical, Amerimed EMS, and Ashley Watson are each liable for the others' breaches of duty, pursuant to Section 405(a)(1) of ERISA, 29 U.S.C. § 1105(A)(1).

117.  Defendants all failed to comply with Section 404(a)(1) of ERISA in the administration of their specific fiduciary responsibilities and thereby enabled each other to commit breaches of ERISA.  Therefore, each Defendant is liable for every other Defendant's breaches of fiduciary duty, pursuant to Section 405(a)(2) of ERISA, 29 U.S.C. § 1105(a)(2).

118.  Defendants, as fiduciaries to the Plan, by failing to make reasonable efforts under the circumstances to remedy the breaches of which they had knowledge, are each liable for the others' fiduciary breaches, pursuant to Section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3).

## COUNT V: FAILURE TO SUPPLY REQUESTED DOCUMENTS
## ERISA SECTION 104(b)(4), 29 U.S.C. § 1024(b)(4)

119.  Plaintiffs incorporate and re-plead by reference the allegations of paragraphs 1 through 100, as though fully set forth herein.

120.  ERISA § 104(b)(4) provides, "The administrator shall, upon written

31

request of any participant or beneficiary furnish a copy of the latest updated summary plan description, and the latest annual report, any terminatl report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. 1024(b)(4).

121. The written requests Plaintiff Lehner sent on October 13, 2025, November 6, 2025, and November 22, 2025 constitute valid requests under this section.

122. Defendant Watson, as Plan Administrator, has violated and continues to violate ERISA, 29 U.S.C. 1132(c)(1)(B), by failing and refusing to comply with Plaintiff Lehner's requests.

123. Plaintiff Lehner is entitled to an order from this Court directing and ordering Defendants to comply with the written requests and to provide Plaintiff Lehner with the information sought in his requests.

124. Plaintiff Lehner is entitled to $100.00 a day for each day thirty days from the date of his request to Defendants until the day he receives the documents.

125. Plaintiff Lehner is entitled to other such equitable relief as this Court deems fair and just, pursuant to ERISA, 28 U.S.C. § 1132(c)(1)(B) and (a)(3).

## VI.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, pursuant to ERISA Sections 502(a)(1)(B), (a)(2), and (a)(3), 29 U.S.C. § 1132 (a)(1)(B), (a)(2), and (a)(3), Plaintiff prays for appropriate and equitable relief against Defendants as follows:

1. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiffs and Class members;

2. Appoint Plaintiffs as class representatives and Plaintiffs' counsel as class counsel;

3. Order Defendants to restore to the Plan and the Plan participants and beneficiaries all losses they suffered, including interest, resulting from fiduciary breaches committed by Defendants or for which they are liable as co-fiduciaries;

4. Order Defendants to correct and undo the prohibited transactions in which they engaged;

5. Order Defendants to disgorge any profits or benefits gained as a result of their fiduciary breaches and/or participation in prohibited transactions;

6. Order Defendants to immediately provide Plaintiff Lehner with the documents he requested pursuant to ERISA Section 104, and Order Defendants to pay Plaintiff Lehner a penalty of $110/day for each day which has elapsed since thirty days after the date of his first request on

October 13, 2025, to the date that Defendants deliver the documents;

7. Award Plaintiffs the costs of this action, including attorney's fees under

   ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and

8. Grant such other and further relief as may be appropriate and just.

Respectfully submitted,

*/s/ Lydia Chastain*
Lydia J. Chastain
Georgia Bar No. 142535
Lee Meier Burke
695 Pylant Street N.E., #105
Atlanta, GA 30306
(404) 905-8699
lchastain@leemeierburke.com

Adam Lubow (OH 0097517)
Law Office of Adam Lubow
700 W. St. Clair Ave., #320
Cleveland, Ohio 44113
(216) 250-1321
adam@lubowlaw.com
(Admitted *Pro hac vice*)

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The above document has been filed with the Court on March 18, 2026, through the CM/ECF system, causing service on all registered parties. The above document has further been emailed to Defendants' counsel Christopher Kelly at ckelly@mobilehealthcarelaw.com.

*/s/ Lydia J. Chastain*
Lydia J. Chastain